IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:07cv1041-MHT |
| | ) | (WO) |
| L. THOMAS DEVELOPMENT, | ) | |
| INC., et al., | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") brings this suit seeking a declaratory judgment on its rights and responsibilities under its general liability-insurance contract. The company seeks a declaration that it has no duty to indemnify defendants L. Thomas Development and Lowell Thomas ("the Thomas defendants) for damages awarded against them in connection with the construction of a home for defendants Brenda and Alvin McQueen ("the McQueen defendants").

Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  By agreement, this case is now under submission for final decision, without trial, on a record developed by the parties.  For the reasons that follow, the court finds in favor of Auto-Owners.

## I. BACKGROUND

In 2004, the McQueen defendants hired the Thomas defendants to construct a home in East Montgomery.  The house was to be built on "prairie soil" or "fat clay," a type of soil that "expands and contracts based upon the moisture content, and must be taken into consideration in the construction of a home."  Arb. Op. at 2 (doc. no. 54-1).  The Thomas defendants "had experience with this type of soil."  Id.

The Thomas defendants hired a geotechnical consultant who recommended that, for the foundation, the Thomas defendants utilize low-plasticity "engineered fill" rather than the expandable fat clay.  However, the Thomas defendants began constructing the foundation before

receiving the consultant's report; they used fat clay, rather than a low-plasticity alternative, as the fill material.

As soon as it was completed, the house exhibited significant problems, including extensive cracking of the interior walls, cracking of the exterior brick, warped structural beams, and malfunctioning of the septic system. The Thomas defendants admitted that mistakes had been made in designing and constructing the home.

The McQueen defendants filed suit in an Alabama state court. The matter was referred for arbitration, and the arbitrator entered an award in favor of the McQueen defendants and against the Thomas defendants. The arbitrator found that the Thomas defendants had "negligently used fat clay as fill in the foundation [of the McQueens' home], and that such fill when exposed to fluctuations in moisture has caused extensive resulting damage to the Plaintiffs." Arb. Op. at 7. He determined that the Thomas defendants should have used a low-

plasticity clay in the foundation and that they were aware that fat clay was an inappropriate fill material. The arbitrator awarded damages of $ 600,000.

Auto-Owners brought this federal lawsuit seeking a declaration that its insurance policy with the Thomas defendants does not cover the damage suffered by the McQueen defendants.

## II. INSURANCE AGREEMENT

The general-liability-insurance policy Auto-Owners has with the Thomas defendants provides the following coverage, as detailed in the insurance form's "Bodily Injury and Property Damage Liability" section:

> "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies....
>
> "b. This insurance applies to 'bodily injury' and 'property damage' only if:
>
> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence'

that takes place in the 'coverage
territory'; and

(2) The 'bodily injury' or 'property
damage' occurs during the policy
period."

Insur. Pol'y at 16 (doc. no. 25-4). The policy defines

"occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general

harmful conditions." Id. at 28. Property damage is

defined as follows: "Physical injury to tangible

property, including all resulting loss of use of that

property. All such loss of use shall be deemed to occur

at the time of the physical injury that caused it." Id.

at 29.

Under the so-called "work product exclusion," United

States Fidelity and Guar. Co. v. Bonitz Insulation Co. of

Alabama, 424 So.2d 569, 573 (Ala. 1982), the policy

excludes coverage in the following circumstances:

"j. 'Property damage' to:

(5) That particular part of real
property on which you or any contractors
or subcontractors working directly or

5

indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

...

l. 'Property damage' to 'your work' arising out of it or any part of it and including the 'products-completed operations hazard.'"

Id. at 19. "Your work" is defined as "Work or operations performed by you or on your behalf" and "Materials, parts or equipment furnished in connection with such work or operations." The exclusion also includes "Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" Id. at 29. Finally, "products-completed operations hazard" encompasses "'property damage' occurring away from premises you own or rent and arising out of ... 'your work.'" Id. at 28.

6

## III.  DISCUSSION

The parties dispute whether the damage the McQueen defendants suffered was the result of the Thomas defendants' intentional conduct (including breach of contract, fraud, or some other intentional tort) or unintentional negligence.    Auto-Owners contends the former while the Thomas defendants and the McQueen defendants contend the latter.    The court need not resolve this dispute because, whatever the mental state of the Thomas defendants was, there is no insurance coverage here.

Intentional conduct:  It is well-established under Alabama law that "the insured bears the burden to establish coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden to prove that any policy exclusion applies."    Thorn v. American States Ins. Co., 266 F. Supp. 2d 1346, 1349 (M.D. Ala. 2002) (Thompson, J.).

7

The Auto-Owners policy is clear that, for there to be coverage, there must have been an "occurrence," and the policy defines "occurrence" as "an accident"  Insur. Pol'y at 16 (doc. no. 25-4).  The Alabama Supreme court has defined an "accident" as follows:  "An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated. ... The term ['accident'] has ... been variously defined as something unforeseen, unexpected, or unusual."  Hartford Cas. Ins. Co. v. Merchants & Farmers Bank, 928 So.2d 1006, 1011 (Ala. 2005) (citations and internal quotations omitted).

Therefore, in determining whether an event is an "occurrence," Alabama courts have generally examined whether the challenged conduct was "expected or intended" by the insured; in general, if the conduct at issue was "expected or intended" then it was not an "accident" and thus was not a covered "occurrence."  See, e.g., Alabama Plating Co. v. U.S. Fidelity and Guar. Co., 690 So.2d

8

331, 333-334 (Ala 1996) ("Accordingly, the focus of the definition of 'occurrence' is whether the insured ... expected or intended that its manufacturing operations would cause the property damage alleged."); U.S. Fidelity and Guar. Co. v. Armstrong, 479 So.2d 1164, 1167 (Ala. 1985) (noting that the insured "must have possessed specific intent to inflict the damage to activate [a] policy exclusion."); Moss v. Champion Ins. Co., 442 So.2d 26 (Ala. 1983) (finding that water damage, which ensued after the insured failed to cover a roof under construction, was not itself intended, and thus the act did constitute an occurrence).

That the insured was aware of the risk of harm does not necessitate a finding of specific intent or expectation. See Continental Cas. Co. v. Plantation Pipe Line Co., 902 So.2d 36, 43 (Ala. 2004); Southern Guar. Ins. Co. of Georgia v. Saxon, 190 Ga. App. 652, 654 (Ga. App. 1989) ("The mere knowledge and appreciation of a risk, short of a substantial certainty, is not the

equivalent of intent.") (internal quotations omitted).
Furthermore, in the context of general-liability
insurance, a finding of "negligence" does not preclude a
determination that the incident was an "accident," as
defined under the contract.  See Moss, 442 So.2d at 28
("It is clear from our cases that the term "accident" in
such a policy does not necessarily exclude human fault
called negligence.").

Here, no one contends that, if the Thomas defendants'
conduct was intentional, as contended by Auto-Owners,
there was an "accident" or "occurrence" and thus that
there was coverage under the insurance policy.[*]

------

[*]Alternatively, Auto-Owners is estopped from
challenging the arbitrator's finding that the Thomas
defendants were negligent.

"[T]he doctrines of [res judicata and collateral
estoppel] apply as well to awards in arbitration as they
do to adjudications in judicial proceedings."  Lee L.
Saad Const. Co., Inc. v. DPF Architects, P.C., 851 So. 2d
507, 516 (Ala. 2002) (citations and quotation marks
omitted) (alternation in original).  Generally, for
collateral estoppel to bar re-litigation, the following
elements must be established:  "(1) that an issue in a
prior action was identical to the issue litigated in the
(continued...)

Unintentional or negligent conduct:   Even if the

Thomas defendants' conduct was negligent, as they and the

_____

*(...continued)
present action; (2) that the issue was actually litigated
in the prior action; (3) that resolution of the issue was
necessary to the prior judgment; and (4) that the same
parties are involved in the two actions."   Id. at 520
(citations and quotation marks omitted).   The party
asserting preclusion as a defense to litigation has the
burden of establishing the matter was appropriately
decided in a prior adjudication.   Id.

    Auto-Owners provided the Thomas defendants with a
defense   in   the   arbitration   proceeding   "under   a
reservation of rights," compl. at 8 (doc. no. 1), and
ostensibly had "a full and fair opportunity to litigate
the issue in [that] proceeding."   Greenblatt v. Drexel
Burnham Lambert, Inc., 763 F.2d 1352, 1360 (11th Cir.
1985).   Furthermore, in the context of insurance law,
"[w]here either an indemnitor or liability insuror has
notice of a proceeding against his indemnitee or insured,
and is afforded an opportunity to appear and defend, a
judgment rendered against the indemnitee or insured ...
is conclusive against the indemnitor or insuror as to all
material matters determined therein."   Coblentz   v.
American Sur. Co. of New York, 416 F.2d 1059, 1062 (5th
Cir. 1969); see also Alabama Farm Bureau Mut. Cas. Ins.
Co., Inc. v. Moore, 349 So. 2d 1113, 1115 (Ala. 1977)
("Where an action against the insured is ostensibly
within the terms of the policy, the insurer, whether it
assumes the defense or refuses to assume it, is bound by
the result of that action as to all matters therein
decided which are material to recovery by the insured in
an action on the policy.") (quoting Miller v. United
States Fidelity & Guaranty Co., 291 Mass. 445, 448-449
(1935)).

McQueen defendants contend, and even if the Thomas defendants' negligent conduct, as found by the arbitrator, was an "occurrence" within the meaning of the Auto-Owners policy, the policy's exclusions would still preclude coverage.

Courts recognize the right of an insurer to restrict its coverage, United States Fidelity and Guar. Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 573 (Ala. 1982); though, when the scope of an exclusion is ambiguous, "the exclusion will be construed so as to limit it to the narrowest application reasonable under the wording." Porterfield v. Audubon Indem. Co., 856 So.2d 789, 800 (Ala. 2000) (quoting Guaranty v. Nat. Ins. Co. v. Marshall County Bd. of Educ., 540 So.2d 745, 748 (Ala. 1989)). Nevertheless, courts are required to interpret the language of an insurance contract as written, and therefore, "cannot defeat express provisions in a policy, including exclusions, by judicial

interpretation." <u>Commercial Union Assur. Co. v. Glass Lined Pipe. Co., Inc.</u>, 372 So.2d 1305, 1307 (Ala. 1979).

In interpreting "work product exclusions," Alabama courts have upheld the denial of coverage in cases of poor workmanship, where the insurance policy denied indemnity for "property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof." <u>Bonitz</u>, 424 So.2d at 573 (finding the policy's exclusionary provisions precluded coverage for damage to a roof resulting from the insured's faulty installation); <u>Berry v. South Carolina Ins. Co.</u>, 495 So.2d 511, 513 (Ala. 1985) (acknowledging that the work-product exclusion denies coverage for damages related to the insured's negligent construction). Similarly here, the Auto-Owners policy specifically excludes coverage for "Property damage to your work arising out of it or any part of it and including in the products-completed operations hazard." Insur. Pol'y at 29 (quotations omitted). It is clear that the policy precludes

indemnity for those negligent or careless actions committed by the Thomas defendants within the scope of this coverage. The Thomas defendants constructed the McQueens' foundation without waiting for a recommendation from their geotechnical consultant, and they did this knowing that fat clay was a high-plasticity material and thus tended to expand with moisture. Their negligent actions, which led to the construction of a house that is virtually uninhabitable, place them squarely within the bounds of the policy's work-product exclusion.

The McQueen defendants contend that the damages in this case are not intended to remedy injury caused by the Thomas defendants' work, but rather the "injury to the McQueens and their home." Br. at 13 (doc. no. 62). They analogize the current proceedings to a hypothetical case, reflecting that, if the Thomas defendants had driven a truck into the McQueens' home, rather than constructing a poor foundation, the subsequent damages would not be excluded by the work-product provisions of the contract.

This argument is defeated by the basic fact that, while truck driving may have been incident, and even necessary, to the Thomas defendants' construction work, the McQueens hired the Thomas defendants to build a house, not drive a truck.  The Thomas defendants' expertise and work is in house construction (as the McQueens acknowledge) and not truck driving, and they negligently built their work product, the McQueens' home.  Faulty workmanship is explicitly not covered under the Auto-Owners policy, and, thus, the insurance company has no duty to indemnify the Thomas defendants for their negligently performed workmanship.

This finding is in line with a pervasive legal understanding of general-liability insurance, the purpose of which is to protect the insured against accidents, unforeseen disasters, and the misfeasance of others, such as sub-contractors; it is not intended to make the insurance company a guarantor of the insured's work.  See Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1564

15

(M.D. Ala. 1996) (Thompson, C.J.) ("To allow
indemnification under the facts presented here would have
the effect of making the insurer a sort of silent
business partner subject to great risk in the economic
venture without any prospects of sharing in the economic
benefit. The expansion of the scope of the insurer's
liability would be enormous without corresponding
compensation.") (quotations omitted); see also Centex
Homes Corp. v. Prestressed Systems, Inc., 444 So. 2d 66,
67 (Fla. Dist. Ct. App. 1984) ("Equally repugnant on
policy grounds is the notion that the presence of
insurance obviates the obligation to perform the job
initially in a workmanlike manner.").

***

For the foregoing reasons, Auto-Owners retains no
obligation to indemnify the Thomas defendants for damages
awarded against them resulting from their failings in the

16

construction of the McQueen defendants' home. An appropriate judgment will be entered.

DONE, this the 9th day of June, 2010.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE